IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARY BRUNSON, Individually and as Executor of the Estate of **Naomi Attanasio**, deceased,<br><br>Plaintiff,<br><br>v.<br><br>FEDERATED DEPARTMENT STORES, INC. and METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No. 04-2782 |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE RECORD

Before the Court is the motion of Plaintiff Mary Brunson ("Plaintiff"), individually and as executrix of the estate of Naomi Attanasio ("Attanasio"), for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure (docket # 6) and Defendants' cross motion for judgment on the record (docket # 8). The complaint alleges that Federated Department Stores, Inc. ("Federated") and Metropolitan Life Insurance Company ("Met Life") (collectively "Defendants") failed to produce documents requested pursuant to the Employee Retirement Income Security Act ("ERISA"). For the following reasons, Plaintiff's motion is GRANTED in part and DENIED in part and Defendants' motion is GRANTED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Attanasio was employed by L. Bamberger and Company department store ("Bamberger"), which was acquired by Federated at some point after Attanasio began her employment there. Attanasio purchased a life insurance policy through Bamberger with an effective date of January 1, 1984. Federated is the plan administrator, and Met Life is the insurer.

When Attanasio purchased the policy, she named her husband as the beneficiary. However, he predeceased her and Attanasio did not name a new beneficiary. At the time that her policy was purchased, there was a provision which stated that in the event that there is no designated beneficiary at the time that the policy becomes payable upon the death of insured, the insurance will be payable to the following: spouse, children, parents, estate.

Attanasio died on November 23, 2003. She had no living children or parents. Plaintiff is one of three surviving siblings and is executrix of Attanasio's estate. Attanasio bequeathed her home to her great nephews and the remainder of her property to Plaintiff.

Defendants assert that at some point after Attanasio purchased the policy but before she died, the policy provision designating the order of precedence of payment changed to spouse, children, parents, siblings, estate. Thus, under the old policy, the death benefit would be payed to the estate and under the new policy, the benefit would be divided among the three siblings. Met Life has paid $6,722.84, which is one-third of the policy benefit, to Plaintiff's sister, Elizabeth S. Nichols and $6,722.83 to Plaintiff's brother, David G. Smith.

On August 4, 2004, Plaintiff sent an ERISA request for documentation to Defendants asking

---

[1] For purposes of this motion, the Court accepts the facts found in section I to be true. They are taken from the Complaint, Plaintiff's motion for summary judgment, and Defendants' response to Plaintiff's motion for summary judgment.

2

for numerous documents. In response, Defendants sent Plaintiff the Summary Plan Description ("SPD") and the Insurance Certificate that they contend were in effect at the time of Attanasio's death. Plaintiff filed a complaint on September 30, 2004, alleging that Defendants violated ERISA by failing to provide all of the requested documents to Plaintiff. On February 2, 2005, Plaintiff filed a motion for summary judgment. On March 4, 2005, Defendants filed a motion for judgment on the record.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998).

Facts must be presented to the court for evaluation. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The court may consider any material that

would be admissible or usable at trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

## III. ANALYSIS

Plaintiff alleges that she is entitled to the following documents 1) documents which verify the existence and status of an ERISA plan, 2) the plan and contract which was in effect at the time that Attanasio purchased her policy, 3) any modifications or amendments to the plan, 4) all

4

correspondence or notices sent to Attanasio concerning changes or supplements to her coverage or to the beneficiary clause of her policy, 4) all correspondence or notices sent to Attanasio concerning insurance certificates or her policy in any way, 5) all contracts between Federated and Met Life providing for any insurance issued to Attanasio, 6) all correspondence or communication between Federated and Met Life concerning Attanasio's life insurance, 7) all correspondence or communication between Defendants and anyone else concerning Attanasio's life insurance, 8) copies of any checks or drafts written as proceeds of Attanasio's policy, 9) the SPD for Attanasio's policy, and 10) copies of any insurance certificates for Attanasio's policy. Plaintiff further asserts that Defendants should be ordered to pay a civil penalty for their failure to comply with Plaintiff's request for documents, as well as attorney fees and costs. Defendants contend that when they sent Plaintiff a copy of the SPD and a copy of the insurance certificate that they maintain was in effect at the time of Attanasio's death, they satisfied all document production requirements of ERISA, and, thus, should not be ordered to pay civil penalties or fees and costs.

A. Document Production

Under ERISA, "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, . . . plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

Defendants argue that, as Federated is the plan administrator, Plaintiff's claims against Met Life should be dismissed. Plaintiff argues that because Federated delegated discretionary authority to interpret plan terms to Met Life, Met Life is a plan fiduciary and is a proper party in this action. Plaintiff alleges that Met Life owed Plaintiff a fiduciary duty and breached that duty in violation of

5

ERISA. For the following reasons, the Court finds that Met Life is not the plan administrator and therefore is not a proper party to this action.

An ERISA fiduciary is held to a high standard of care. In fact, "ERISA's duty of loyalty, is 'the highest known to the law.'" Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 294 (5th Cir. 2000) (citing Donovan v. Biewirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982). A fiduciary has a responsibility to "discharge [its] interests with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). See also, Ballone v. Eastman Kodak Co., 109 F.3d 117, 122 (2d Cir. 1997). However, this case is not concerned with the duties of a fiduciary or the interpretation or application of the policy or the payment of benefits. It is only concerned with the production of documents pursuant to ERISA. As ERISA clearly designates the plan administrator as the entity responsible for the production of documents, Met Life, even if a fiduciary, cannot be held liable for Federated's alleged failure to produce the requested documents. Thus, the Court holds that Defendants' motion for judgment as to claims against Met Life is granted.

Defendants next argue that under ERISA, they were only obligated to produce the most recent SPD and insurance certificate, both of which were sent to Plaintiff in response to her request. Plaintiff contends that under ERISA, she was entitled to all of the requested documents.

Plaintiff maintains that the policy provisions which were in force at the time that Attanasio purchased the policy are the ones that should govern. Defendants assert that changes were made to the policy over the years and the most recent version governs. Plaintiff contends that there are documents which she would need in order to determine whether or not she can bring a suit against Defendants for failure to pay benefits.

Although ERISA delineates certain documents to which a plan participant or beneficiary is

6

entitled, it also states that the plan administrator is required to provide "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The Act does not define "instrument," although it generally refers to a formal legal document. Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 142 (2nd Cir. 1997). Black's Law Dictionary defines "instrument" as "[a] document or writing which gives formal expression to a legal act or agreement, for the purpose of creating, securing, modifying, or terminating a right" Id. (quoting Black's Law Dictionary 941 (4th ed. 1951)). "The legislative history of ERISA . . . reveals that ERISA's disclosure requirements were meant to arm plan participants with specific knowledge of their rights and remedies with respect to employee benefit plans." Id. at 143. The precursors to ERISA's disclosure provisions were found in the Welfare and Pension Plans Disclosure Act ("Disclosure Act"), Pub.L. No. 85-836, 72 Stat. 997 (1958) (codified at 29 U.S.C. §§ 301-309 (1958)), which did not require plans to disclose more than their annual reports and plan descriptions, see 29 U.S.C. § 304(a) (1958). Id. at 143-44.

> Finding that the Disclosure Act was "weak in its limited disclosure requirements," and "inadequa[te]" in "protecting rights and benefits due to workers," Congress enacted broader disclosure requirements in ERISA, noting that the new reporting requirements [are] designed to disclose more significant information about plans and the transactions engaged in by those controlling plan operations and to provide specific data to participants and beneficiaries concerning the rights and benefits they are entitled to under the plans and the circumstances which may result in their not being entitled to benefits.

Id. at 144 (quoting H.R.Rep. No. 93-533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4642, 4648). Although ERISA's disclosure requirements are far from unlimited, Federated was clearly required to produce more that the SPD and insurance certificate. At the least, a plan administrator is required to provide a participant or beneficiary documents that allow the individual to know exactly where

7

she stands with respect to the plan, to what benefits she may be entitled, what circumstances may preclude her from obtaining benefits, what procedures she must follow to obtain benefits, and to whom the plan funds have been entrusted. Id.

In the instant case, Plaintiff has only located among Attansio's papers, information about the plan as it was at the time that she purchased the policy. Based on those documents, Attanasio's estate would be the beneficiary of the policy and Plaintiff the beneficiary of the estate. Although Defendants have produced more recent plan documents, they have not produced any information that would inform Plaintiff of the formation of an ERISA plan, Bamburger's involvement in that plan, the change in the beneficiary clause and Attanasio's awareness of it, or documents that show that the participants were informed of the change. As a possible beneficiary, Plaintiff is entitled under ERISA to "documents that provide or contain information concerning the terms and conditions of the policy." Allinder v. Inter-City Products Corp., 152 F.3d 544, 549 (6th Cir. 1998). Thus, she is entitled to specific data concerning the rights and benefits to which she is entitled and the circumstances under which she may not be entitled to benefits. See Weinstein, 107 F.3d at 144.

However, as previously noted, ERISA's document production requirements are not unlimited. Plaintiff has requested all correspondence between Federated and Met Life concerning claims, as well as correspondence between Defendants and others. Additionally, Plaintiff has requested copies of all checks written as policy benefits and cover letters accompanying those checks. However, these are not legal documents that are "instruments" under ERISA. Furthermore, Plaintiff has requested all SPDs which have been in effect at any time since Attanasio purchased her policy. With respect to SPDs the language of ERISA clearly provides for "the latest updated" SPD, not every one since the policy was purchased.

8

The Court finds that Plaintiff is entitled to the contract under which the plan is established, any documents that denote the origination of an ERISA plan and Bamberger's involvement in it, and any documents which establish the change in the beneficiary clause and the dissemination of that information to plan participants. As to those documents, the Court grants Plaintiff's motion for summary judgment and denies Defendants' motion for judgment. As to all other documents, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for judgment.

B. Civil Penalties

Defendants admit that Federated is the administrator of the plan and that Plaintiff is a beneficiary under it. Defendants do not deny that the plan qualifies as a benefit plan under ERISA. Nor do they dispute that as an administrator of an employee benefit plan governed by ERISA Federated is obligated to comply with the duties of disclosure mandated by section 1024(b)(4). Defendants further admit that they failed to provide most of the documents requested by Plaintiff. However, Defendants maintain that they provided the only documents among those requested by Plaintiff that were required by ERISA and that, even if others were required, Plaintiff was not prejudiced. In support of their argument that prejudice must be established for civil penalties to be awarded, Defendants cite Lesman v. Ransburg Corp., 719 F.Supp. 619 (W.D. Mich. 1989), aff'd. 911 F.2d 732 (6th Cir. 1990), and Gatlin v. National Healthcare Corp., 2001 WL 223732 (6th Cir. 2001). However, in both cases, the courts recognized that the award of penalties is in the discretion of the court and that prejudice is not required but is only one factor for a court to consider in determining whether or not penalties would be appropriate. In Lesman, the Court held that, "[t]he statutory award under 29 U.S.C. § 1132(c) is punitive and [is] designed to induce or compel disclosure of information required by ERISA. . . . Although . . prejudice is not a prerequisite for the

9

imposition of nondisclosure penalties under 29 U.S.C. § 1132(c)[,] courts properly may consider detrimental reliance or prejudice before imposing penalties under 29 U.S.C. § 1132(c)." Lesman, 719 F.Supp. at 622.

In Gatlin, the Court held that, while prejudice to the beneficiary is a "logical concern" for a court to consider in deciding whether to impose a penalty "the language of ERISA indicates that prejudice and the company's good-faith beliefs are not relevant to the company's duty to disclose the plan's terms to the employee." Gatlin, 2001 WL 223732 at *4. In Gatlin, the defendant argued that the plaintiff was not prejudiced and that its failure to send documents was based on a good-faith belief that the documents were irrelevant to Gatlin's legal position. Id. However, the Gatlin Court found that the plaintiff was prejudiced because the delay in receiving the requested documents "hindered the plaintiff's ability to appeal the decision at the earliest opportunity." Id. Moreover, the Gatlin Court noted that the defendant's good-faith belief that the documents were irrelevant for the plaintiff did not effect the defendant's duty to provide the requested disclosures.

> No exceptions are made for when the employer decides that the employee does not need the forms. In fact, the implication of the blanket disclosure requirement is that the decision as to whether the forms are relevant should be made by the employee, not the employer. As a result, the employer's own thoughts about the legal theories available to the employee have no impact on the duty to disclose the plan's contents.

Id.

Similarly, in the instant case, Plaintiff continues to be forced to delay appealing the payment of benefits to her siblings because she has not yet received the documents that would establish what benefits she is entitled to under the plan. Furthermore, as in Gatlin, Defendants' determination that the requested documents were irrelevant did not excuse Federated from its duty under ERISA to provide Plaintiff with those requested documents that are required.

10

In Bartling v. Fruehauf Corp., 29 F.3d 1062 (6th Cir. 1994), the Sixth Circuit held that the defendant's failure to disclose was not the result of bad faith and did not prejudice the plaintiff in any way. Bartling, 29 F.3d at 1066. However, the district court found, and the Sixth Circuit affirmed, that "as a matter of law, . . . bad faith and prejudice were not essential predicates for imposing statutory penalties for the failure to disclose; rather they were merely factors to consider in deciding what penalty to impose." Id. at 1067. In Bartling, the Court awarded penalties of $100 a day per document.

Here, the Court believes that Federated did not fail to act because of bad faith. However, Federated did shirk its duty under ERISA because it decided that the requested documents were irrelevant. That was not Federated's' decision to make. Thus, the Court holds that Federated must pay civil penalties of ten dollars per day beginning the thirty-first day after receipt of the first letter from Plaintiff requesting documents.

C. Attorney's Fees and Costs

Plaintiff asks the Court for an award of attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g). Title 29 of the United States Code, section 1132 (g)(1) states that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

In considering whether to award attorney's fees, the Sixth Circuit has stated that courts should consider the following factors: 1) the degree of the defendant's culpability or bad faith; 2) the defendant's ability to satisfy an award of attorney's fees; 3) the deterrent effect of an award on others under similar circumstances; 4) whether there will be a common benefit for all participants and beneficiaries of the ERISA plan or resolve significant legal questions regarding ERISA; and 5)

11

the relative merits of the parties' positions. <u>Foltice v. Guardsman Products, Inc.</u>, 98 F.3d 933, 936-37 (6th Cir. 1996).

Although the Court has held that Federated violated ERISA when it failed to produce some of the documents that Plaintiff requested, the Court does not find that Federated acted with bad faith, thus the first criterion weighs in favor of Federated. There has been no assertion that Federated would have an inability to satisfy an award of attorney's fees. The deterrent effect is clear. "[A] stiffer penalty encourages plan administrators to alter their behavior with respect to employee appeals and requests for documents." <u>Gatlin</u> 2001 WL 223732 at *5. The fourth factor questions whether there would be a common benefit for participants or other beneficiaries of the plan or resolution of any significant legal questions. In this case, neither would apply. Finally, the fifth factor requires the Court to compare the relative merits of the parties' positions. Plaintiff requested numerous documents, some of which were not required under ERISA. Moreover, Federated provided Plaintiff with some of the requested documents. Based on consideration of the <u>Foltice</u> factors, the Court holds that Federated is not required to pay attorney's fees or costs.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court **GRANTS** Defendants' motion for judgment as to Met Life. The Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendants' motion for judgment as to Federated's obligation to provide Plaintiff with the contract under which the plan is established, any documents that denote the origination of an ERISA plan and Bamberger's involvement in it, and any documents which establish the change in the beneficiary clause and the dissemination of that information to plan participants. The Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendants' motion for judgment as to all other documents.

Furthermore, the Court **GRANTS** Plaintiff's motion for an award of civil penalties against Federated, in the amount of ten dollars per day beginning thirty-one days following receipt of Plaintiff's first request. Finally, the Court **DENIES** Plaintiff's motion for attorney's fees and costs.

**IT IS SO ORDERED** this 2nd day of May, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 26 in case 2:04-CV-02782 was distributed by fax, mail, or direct printing on May 4, 2005 to the parties listed.

---

Joseph Michael Cook
OFFICE OF JOSEPH M. COOK
1707 Kirby Pkwy.
Ste. 200
Memphis, TN 38120

John J. Heflin
BOURLAND HEFLIN ALAREZ & MINOR
5400 Poplar Avenue
Ste. 100
Memphis, TN 38119

Honorable Bernice Donald
US DISTRICT COURT